# Supreme Court of the Navajo Nation

**Bernice C. Begay, Appellant,**
v.
**Martha Keedah & Nellie Johnson, Appellees.**
**Decided November 26, 1991**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Daniel Deschinney Sr., Esq., Window Rock, Navajo Nation (Arizona), for the appellant.

Opinion delivered by TSO, Chief Justice.

This is an appeal from a January 14, 1991 judgment of the Shiprock Family Court, in a declaratory judgment and quiet title action. The judgment dissolved a "trust" of a grazing permit, and reissued it to related permittees. This appeal raises issues of law regarding the validity of prior judgments, as well as questions of the nature and tenure of grazing permits. It requires the Court to examine the effect of permit trusts under both Navajo common law and general principles of American trust law.

## I. THE CASE

The grazing permit which is the subject of this appeal was originally issued to Mike Johnson on November 24, 1941. The permit, No. 12-646, allowed Johnson to graze 19 sheep units, including three horses, in Grazing District No. 12. His home was at Sheep Springs, which lies in the southeast portion of the district.

On August 28, 1956, the Navajo Court of Indian Offenses entered a probate decree for the estate of Mike Johnson, awarding the permit to his surviving wife, Eva Johnson. However, in 1957, Mike Johnson went before the court to declare that he was very much alive, and wanted his permit back. The court's July 31, 1957 judgment provides as follows:

> Mike Johnson C#25978 who was said to have been dead a year ago appeared before the court wanting his permit #12-646 consisting of 19 sheep Units including 3 horses which was probated on August 28, 1956 by J. Duncan judge of Navajo Court granted to Eva Johnson; is hereby declared void surperceed [sic] by this judgment.

Mike Johnson is mentally incompetent [sic] .

The court hereby appoints Martha Curley C#25616 to hold and [sic] trust said permit #12-1552 consisting of 19 sheep units, including 3 horses for district #12 for her two sister [sic]: Nellie Johnson age-19, and Martha Johnson age-10 until they reach the age of 21.

The court used a standard form judgment and order, with a section to record a satisfaction of judgment. Following the language, "Satisfaction of the above judgment is hereby acknowledged," is the typewritten name, "Mike Johnson," with a hand-drawn arrow pointing to a thumbprint. Margaret Johnson Curley, Nellie Johnson and Martha Johnson were the three children of Mike and Eva Johnson.

On October 23, 1957, the Bureau of Indian Affairs implemented the judgment by reissuing the permit to "Margarett [sic] Curley," as permit No. 12-1649. On November 20, 1957, the Navajo Court of Indian Offenses amended the July 31, 1957 judgment to reflect the name "Margarett [sic] Curley" on the permit.

Margaret J. Curley died on August 16, 1975, and on May 21, 1979, the Window Rock District Court entered an intestate probate decree awarding a one-third interest in the permit to Mabel C. Yazzie, for her to hold in trust for the benefit of Ervin Curley and Kathy Curley until they reached age 21. They were an adult (Mabel) and two minor children of Margaret J. Curley. Bernice C. Begay, the petitioner and appellant, was listed in the decree as an heir, but she did not receive a share of the permit. The probate decree is silent about the remaining two-thirds interest, but it appears that the court intended to confirm the prior titles of Nellie and Martha Johnson.

When the May 21, 1979 probate decree reached the Bureau of Indian Affairs Superintendent for the Shiprock Agency, he forwarded it to the Interior Department Field Solicitor for an opinion on who should have the permit under the Bureau's Navajo Grazing Regulations. On October 25, 1979, the field solicitor issued a memorandum opinion which determined that the trust established by the July 31, 1957 judgment automatically terminated on the death of Margaret J. Curley. The solicitor advised that the grazing permit rightfully belonged to Nellie and Martha Johnson, and that the one-third interest given to Mabel Yazzie was void. On November 16, 1979, the Shiprock Bureau of Indian Affairs Superintendent advised the Window Rock District Court that the Bureau would not enforce the probate decree.

There is no record to show how the question of who "owned" the grazing permit was resolved after the impasse created by the Bureau of Indian Affairs. Almost ten years later, Bernice C. Begay, one of Margaret J. Curley's children, filed an action for a declaratory judgment to quiet title to the permit. Although she did not receive an interest in the permit following her mother's probate, Begay claimed the permit for herself. She alleged that the 32-year old judgment, entered on July 31, 1957, was invalid because Mike Johnson did not consent to it, that Margaret J. Curley used the permit to the exclusion of all others, and that neither Nellie Johnson (Bryant) nor Martha Johnson (Keedah) made any claim or demand for the permit.

The Shiprock Family Court's January 14, 1991 judgment upheld the 1957 judgment, dissolved the trust created by it, and ordered that the permit be reissued in the names of Martha Keedah and Nellie Johnson. Bernice C. Begay took an appeal from that judgment, contending that the family court erred by failing to rule on the issues raised in the petition, and further erred by refusing to void the 1957 judgment. This appeal is not opposed by any other permittee.

The issues which control this appeal are as follows:

1. Were the 1957 and 1979 judgments void or voidable?
2. What kind of "trust" did the July 31, 1957 judgment create?
3. What principles apply to a quiet title action for a grazing permit?

## II. VALIDITY OF THE JUDGMENTS

In the absence of a clear showing that there was a lack of jurisdiction, fraud, or other grounds which are inconsistent with justice, a judgment of a court of the Navajo Nation is considered valid. *See Zion's First National Bank v. Joe*, 4 Nav. R. 92 (1983); *Navajo Engineering & Construction Authority v. Nobel*, 5 Nav. R. 1, 3 (1984). A judgment which appears regular on its face is presumed to be valid, absent such a showing.

The probate decree of August 28, 1956 was obviously void, because the event which is essential to probate jurisdiction was absent - death. Mike Johnson went before the Navajo Court of Indian Offenses to reopen his own estate and demand the return of the grazing permit, because he was very much alive.

The appellant attacks the July 31, 1957 judgment which declared Mike Johnson incompetent and established the initial trust, on various grounds. The first part of our analysis of the validity of the judgment must be whether the Navajo Court of Indian Offenses had jurisdiction.

The Navajo Court of Indian Offenses was an administrative arm of the Bureau of Indian Affairs, and it was established in 1892. *Sixty-First Annual Report of the Commissioner of Indian Affairs* 209 (1892). When Congress enacted the Indian Reorganization Act of 1934, the Bureau of Indian Affairs issued "Law and Order" regulations which gave Courts of Indian Offenses jurisdiction to determine the heirs of decedents. *Federal Register* 952 at 956 (May 18, 1938) (The Navajo Nation adopted the same provision as Navajo law when it adopted the Law and Order Regulations by Resolution No. CO-69-58, on January 9, 1959). The Navajo Court of Indian Offenses had subject matter jurisdiction over Mike Johnson's probate because of those regulations, and it also had jurisdiction to rectify the void decree it entered on August 28, 1956.

The court also had jurisdiction to enter the July 31, 1957 decree which established a trust for Mike Johnson's grazing permit. It had personal jurisdiction, because Johnson personally appeared before the court. It had subject matter jurisdiction, because Johnson agreed to a disposition of his permit. We believe that disposition was made using Navajo common law, and the Navajo Court of Indian

Offenses had the power to apply that law. *Federal Register, supra,* Ch. 2, § 2, at 955. Under Navajo common law, if an individual cannot use or does not want a grazing permit, he or she can give it up in favor of children. *In re Trust of Benally,* 1 Nav. R. 10, 12 (1969) (action to divide a grazing permit).

What happened in 1957 is evident from the face of the judgment. Johnson complained to the court, and it was prepared to void the prior judgment to return the permit to him. Someone, most likely Johnson, determined that he was "mentally incompetent" to manage the permit. It is usual, normal, and in keeping with Navajo culture for an elderly person to be concerned about health, state of mind, and the use of a permit, so elderly parents sometimes surrender a permit to children or grandchildren. Johnson was present, and he put his thumbprint on the judgment before witnesses. Therefore, the appellant failed to overcome the presumption of the regularity of the judgment. She did not show a lack of jurisdiction, fraud, incapacity, or any other ground to conclude that the 1957 judgment was void as a matter of law.

Likewise, the May 21, 1979 probate decree of the Window Rock District Court is entitled to the presumption of validity and regularity. That court had subject matter jurisdiction under both Navajo probate law and the Navajo Grazing Regulations. 8 N.T.C. § 1; 25 C.F.R. § 167.8(a) (1991). The court made its own interpretation of the 1957 judgment, which it had jurisdiction to do. 7 N.T.C. § 253(4). The Interior Department Field Solicitor attempted to act as an appellate court, and she had no authority to do so. *Estate of Descheeny,* 4 Nav. R. 145 (Window Rock D. Ct., 1983). The Window Rock District Court used Navajo common law to interpret the prior judgment, and the field solicitor applied general American trust law. However, the solicitor's own regulations gave the Navajo courts, and not the Bureau of Indian Affairs, the power to make the determination. 25 C.F.R. § 167.8(d). Therefore, the 1957 judgment creating the "trust," and the 1979 probate decree were valid on their faces, and nothing in the record here supports an attack on their legal sufficiency.

## III. THE TRUST

There is a difference between a "trust" in general American law, and a "trust" under Navajo common law. One definition of a "trust" in American law is as follows: "A confidence reposed in one person, who is termed trustee, for the benefit of another, who is called the cestui que trust, respecting property which is held by the trustee for the benefit of the cestui que trust." BLACK'S LAW DICTIONARY 1508 (6th ed. 1990). A "trust" under Navajo common law is quite different.

To understand the Navajo customary trust, we must examine Navajo land use. Traditional Navajo land tenure is not the same as English common law tenure, as used in the United States. Navajos have always occupied land in family units, using the land for subsistence. Families and subsistence residential units (as they are sometimes called) hold land in a form of communal ownership. Grazing

rights are a land use right, but they are not individual rights as such. Navajo families and relatives occupy an area and graze animals for the benefit of the group. A grazing permit is not a form of land title, but the right of a named permittee to graze a certain number of animals in a large common grazing area. The right is measured by "animal units" or "sheep units."

The judges of the former Navajo Court of Indian Offenses understood the concepts of communal land use and grazing permit tenure well. They also understood that the Navajo Indian agent, and later the Bureau of Indian Affairs agency superintendent, operated using a different set of rules. American law generally establishes the rights of individuals, and does not recognize the rights of groups. Therefore, the Navajo judges knew that a grazing permit would have to be in the name of one individual. However, because Navajos share grazing rights with others, there had to be a method to protect the group. That method is the Navajo "customary trust" for grazing permits, which was developed by the Navajo judges.

The usual pattern of the trust is for an elderly Navajo permittee to give the permit to a child, to be held "in trust" for other children or grandchildren. Usually the most responsible child, and one who makes actual use of the permit, will hold the permit in his or her own name, but to be shared and used by the other children. The Navajo courts follow the same process in probates, awarding it to the "most logical heir," who is personally involved in using the permit. *In re Estate of Benally*, 5 Nav. R. 174, 179 (1987). The "trustee" is therefore a person who holds a grazing permit for the benefit of those who actually graze sheep or cattle on the land. That has nothing to do with the American common law trust.

Navajo Nation grazing law is based upon traditional expectations, so the Navajo common law takes precedence over American common law. The former Navajo Court of Indian Offenses applied the Navajo common law trust, and American trust language was incorporated to implement it. That is because Navajo judges knew they would have to supply a justification to get Bureau of Indian Affairs officials to honor their decrees. Unfortunately, that causes confusion in the minds of some officials, and prompts us to further clarify the Navajo trust.

On July 31, 1957, when Mike Johnson went before Judge Duncan to demand the return of the grazing permit, Johnson did not intend that there be a trust created which would require daughter Margaret Curley to simply hold the permit until daughters Nellie and Martha reached age 21. The proper interpretation of the judgment in the record is that Johnson saw he was unable to care for the herd, and he wanted all three daughters to benefit from the permit. The probate decree for Margaret Curley's estate reflects the same interpretation. The effect of the 1957 judgment was to create a Navajo common law trust, with each of three children having an equal share in the permit.

## IV. GRAZING PERMIT QUIET TITLE ACTIONS

While the 1979 probate decree is valid, because the court had both personal and subject matter jurisdiction, that does not mean that it was correct. The pre-

siding judge could not have anticipated that we, in 1987, would rule that "once a customary trust is established, those involved in the trust cannot normally devise their interests in the land or grazing permits to their heirs, as that would cause the rights to be split up among more and more owners. Rather, the permits remain intact, and the last surviving member of the original trust will end up owning the entire permit." *In re Estate of Benally*, 5 Nav. R. at 180. Normally, that ruling would foreclose the appellant's claim, given the fact she was not a beneficiary of either the original trust or the one created in her mother's estate. However, the petition alleges that "Nellie Johnson and Martha Johnson Keedah had made no claim nor demand for the ownership of the grazing permit," and it prayed the family court to declare "that after Margaret Curley's death, the petitioner [appellant], having had and used the described grazing permit, is best suited to be entitled to the ownership of the permit." In effect, the petition asked the family court to declare that the appellant was the most logical heir who was personally involved in using the permit.

Another aspect of traditional Navajo land tenure is the principle that one must use it or lose it. In *In re Estate of Benally*, we summarized the land policies of the Navajo Nation as follows: (1) animal units in grazing permits must be sufficiently large to be economically viable; (2) land must be put to its most beneficial use; (3) the most logical heir should receive land use rights; (4) use rights must not be fragmented; and (5) only those who are personally involved in the beneficial use of land may inherit it. 5 Nav. R. at 179. All these land policies are designed to assure that Navajo Nation lands are used wisely and well, and that those who actually live on them and nurture them should have rights to their use.

The appellant alleges that neither of the survivors of the 1957 trust have ever utilized the grazing permit. Apparently, the appellant believes that the appellees have abandoned their interests in their father's permit. If true, particularly given the passage of 34 years, that raises a colorable right the family court should examine in this quiet title action on remand.

The record shows that while the appellant joined the 1957 trust beneficiaries, she did not provide the beneficiaries of the 1979 trust notice or an opportunity to be heard on their interests in the permit. This quiet title action could not reach a valid conclusion without joining them as parties on remand. Additionally, the usual practice in quiet title actions is to "join the entire world" as parties, by means of public notice.

This action is remanded to the Family Court for the Shiprock District for declaratory and quiet title proceedings, in accordance with this opinion, utilizing the equitable principles of Navajo common law.

So ORDERED.